No. 25-1054(L)

# IN THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

PHARMACEUTICAL RESEARCH AND MANUFACTURERS OF AMERICA,

*Plaintiff-Appellee,*

v.

JOHN B. MCCUSKEY, in his official capacity as Attorney General of West Virginia; JOHN BERNABEI, in his official capacity as a member of the West Virginia Board of Pharmacy; JAMES RUCKER, in his official capacity as a member of the West Virginia Board of Pharmacy; JENNA MISITI, in her official capacity as a member of the West Virginia Board of Pharmacy; SAM KAPOURALES, in his official capacity as a member of the West Virginia Board of Pharmacy; DAVID BOWYER, in his official capacity as a member of the West Virginia Board of Pharmacy; DENNIS LEWIS, in his official capacity as a member of the West Virginia Board of Pharmacy; ROBERT DUNCAN, in his official capacity as a member of the West Virginia Board of Pharmacy; ALLAN MCVEY, in his official capacity as Insurance Commissioner,

*Defendants-Appellants.*

On Appeal From The United States District Court
For The Southern District Of West Virginia
Case No. 2:24-cv-00271 (Johnston, T.)

No. 25-1055

ABBVIE, INCORPORATED, a Delaware corporation; ALLERGAN, INCORPORATED, a Delaware corporation; DURATA THERAPEUTICS, INC., a Delaware corporation; ABBVIE PRODUCTS LLC, a Georgia limited liability company; APTALIS PHARMA US, INC., a Delaware corporation; PHARMACYCLICS LLC, a Delaware limited liability company; ALLERGAN SALES, LLC, a Delaware limited liability company,

*Plaintiffs-Appellees,*

v.

JOHN B. MCCUSKEY, in his official capacity as Attorney General of West Virginia; JOHN BERNABEI, in his official capacity as a member of the West Virginia Board of Pharmacy; JAMES RUCKER, in his official capacity as a member of the West Virginia Board of Pharmacy; JENNA MISITI, in her official capacity as a member of the West Virginia Board of Pharmacy; SAM KAPOURALES, in his official capacity as a member of the West Virginia Board of Pharmacy; DAVID BOWYER, in his official capacity as a member of the West Virginia Board of Pharmacy; DENNIS LEWIS, in his official capacity as a member of the West Virginia Board of Pharmacy; ROBERT DUNCAN, in his official capacity as a member of the West Virginia Board of Pharmacy; ALLAN MCVEY, in his official capacity as Insurance Commissioner, MICHAEL GOFF, in his official capacity as the Executive Director of the West Virginia Board of Pharmacy.

*Defendants-Appellants.*

On Appeal From The United States District Court
For The Southern District Of West Virginia
Case No. 2:24-cv-00272 (Johnston, T.)

**No. 25-1056**

NOVARTIS PHARMACEUTICALS CORPORATION,

*Plaintiff-Appellee,*

v.

JOHN B. MCCUSKEY, in his official capacity as Attorney General of West Virginia; JOHN BERNABEI, in his official capacity as a member of the West Virginia Board of Pharmacy; JAMES RUCKER, in his official capacity as a member of the West Virginia Board of Pharmacy; JENNA MISITI, in her official capacity as a member of the West Virginia Board of Pharmacy; SAM KAPOURALES, in his official capacity as a member of the West Virginia Board of Pharmacy; DAVID BOWYER, in his official capacity as a member of the West Virginia Board of Pharmacy; DENNIS LEWIS, in his official capacity as a member of the West Virginia Board of Pharmacy; ROBERT DUNCAN, in his

official capacity as a member of the West Virginia Board of Pharmacy; ALLAN MCVEY, in his official capacity as Insurance Commissioner, MICHAEL GOFF, in his official capacity as the Executive Director of the West Virginia Board of Pharmacy.

*Defendants-Appellants.*

---

On Appeal From The United States District Court
For The Southern District Of West Virginia
Case No. 2:24-cv-00298 (Johnston, T.)

---

## APPELLANTS' PETITION FOR *EN BANC* REHEARING

---

JOHN B. MCCUSKEY
 *Attorney General*

OFFICE OF THE WEST
VIRGINIA ATTORNEY
GENERAL
1900 Kanawha Blvd., East
Building 1, Room E-26
Charleston, WV 25305
Phone: (304) 558-2021
cdavid@wvago.gov

MICHAEL R. WILLIAMS
 *Solicitor General*

CALEB B. DAVID
 *Deputy Solicitor General*
 *Counsel of Record*

CALEB A. SECKMAN
 *Assistant Solicitor General*

Emily C. Ahlstrom*
 *Assistant Solicitor General*

*Counsel for Defendants-Appellants*

# TABLE OF CONTENTS

Table of Authorities ........................................................................................... ii

Introduction and Rule 40(b) statement ............................................................. 1

Background ......................................................................................................... 4

I.      Congress passes the 340B program ................................................. 4

II.     The manufacturers revolt ................................................................ 5

III.    States—including West Virginia—respond ................................ 6

IV.    The manufacturers sue ..................................................................... 7

Argument ............................................................................................................ 8

I.      The decision creates a circuit split ............................................... 8

II.     The decision is irreconcilable with precedent ........................... 10

      A.     Under traditional principles, S.B. 325 is not preempted ............. 10

      B.     The majority's novel preemption analysis lacks support ............. 14

      C.     The decision violated party presentation principles .................... 18

III.    This case presents exceptionally important questions ........................... 20

Conclusion ........................................................................................................ 20

Certificate Of Compliance ............................................................................... 22

# TABLE OF AUTHORITIES

<strong>Page(s)</strong>

**Cases**

*Abbott v. Perez*,
585 U.S. 579 (2018) ...................................................................................20

*AbbVie Inc. v. Hilgers*,
No. 4:25CV3089, 2025 WL 3688051 (D. Neb. Dec. 19, 2025) .......................14

*AbbVie, Inc. v. Fitch*,
152 F.4th 635 (5th Cir. 2025) ............................................................2, 8, 9, 10

*AbbVie, Inc. v. Murrill*,
166 F.4th 528 (5th Cir. 2026) ..................................................................2, 8, 14

*Adbul-Mumit v. Alexandria Hyundai, LLC*,
896 F.3d 278 (4th Cir. 2018) ......................................................................18

*AIDS Healthcare Found. v. Douglas*,
457 F. App'x 676 (9th Cir. 2011) .................................................................12

*Arizona v. United States*,
567 U.S. 387 (2012) ..................................................................................3, 11

*Astra USA, Inc. v. Santa Clara Cnty.*,
563 U.S. 110 (2011) .......................................................................................4

*Bates v. Dow Agrosciences LLC*,
544 U.S. 431 (2005) ......................................................................................13

*Buckman Co. v. Plaintiffs' Legal Comm.*,
531 U.S. 341 (2001) ......................................................................................15

*Clark v. Sweeney*,
607 U.S. 7 (2025) ..........................................................................................18

*De Buono v. NYSA-ILA Med. & Clinical Servs. Fund*,
520 U.S. 806 (1997) ......................................................................................11

*Franchise Tax Bd. of Cal. v. Hyatt,*
  587 U.S. 230 (2019)........................................................................19

*Ga. Firefighters' Pension Fund v. Anadarko Petroleum Corp.,*
  99 F.4th 770 (5th Cir. 2024) .........................................................19

*GenBioPro, Inc. v. Raynes,*
  144 F.4th 258 (4th Cir. 2025) .........................................11, 12, 16

*N. Va. Hemp & Agric., LLC v. Virginia,*
  125 F.4th 472 (4th Cir. 2025) .......................................................11

*Novartis Pharms. Corp. v. Brown,*
  No. 1:24-cv-01557-MJM, slip op. (D. Md. Sept. 5, 2024) ...............7

*Novartis Pharms. Corp. v. Johnson,*
  102 F.4th 452 (D.C. Cir. 2024) .......................................................5

*Oneok, Inc. v. Learjet, Inc.,*
  575 U.S. 373 (2015)..............................................................11, 13

*Pennhurst State Sch. & Hosp. v. Halderman,*
  451 U.S. 1 (1981).........................................................................17

*Pharm. Rsch. & Mfrs. of Am. v. Frey,*
  No. 25-00469, 2026 WL 184504 (D. Me. Jan. 23, 2026).................7

*Pharm. Rsch. & Mfrs. of Am. v. McClain,*
  95 F.4th 1136 (8th Cir. 2024) ...................................2, 5, 8, 9, 10

*Pharm. Rsch. & Mfrs. of Am. v. McCuskey,*
  No. 25-1054, 2026 WL 898259
  (4th Cir. Mar. 31, 2026) .....................................2, 3, 8, 9, 10, 11, 12,
                                                                                      13, 14, 15, 16, 17, 18, 19

*Pharm. Rsch. & Mfrs. of Am. v. Morrisey,*
  760 F. Supp. 3d 439 (S.D.W. Va. 2024) .........................................8

*Pharm. Rsch. & Mfrs. of Am. v. Weiser,*
  No. 25-02437, 2026 WL 763970 (D. Colo. Mar. 18, 2026).............7

*Pinney v. Nokia, Inc.*,
402 F.3d 430 (4th Cir. 2005)..............................................................10

*Planned Parenthood of Houston & Se. Tex. v. Sanchez*,
403 F.3d 324 (5th Cir. 2005)..............................................................14

*Riley v. Bondi*,
606 U.S. 259 (2025)............................................................................18

*Sanofi Aventis U.S. LLC v. HHS*,
58 F.4th 696 (3d Cir. 2023)...........................................4, 5, 6, 12, 17

*St. Luke's Health Sys., Ltd. v. Labrador*,
782 F. Supp. 3d 953 (D. Idaho 2025)................................................17

*Texas v. DHS*,
123 F.4th 186 (5th Cir. 2024) ...........................................................15

*United States v. Sineneng-Smith*,
590 U.S. 371 (2020)............................................................................19

## Statutes

42 U.S.C. § 256b ...................................................................................4

W. Va. Code § 60A-8-6a...................................................1, 2, 6, 7, 14

## Regulations

*Manufacturer Audit Guidelines and Dispute Resolution
Process*, 61 Fed. Reg. 65406, 65406 (Dec. 12, 1996)......................14

## Rules

Fed. R. App. P. 40 .................................................................................8

## Other Authorities

*340B State Law Contract Pharmacy Decisions*, AHA,
   https://tinyurl.com/y3e86e96 (last visited Apr. 13, 2026) ..............................7

H.R. Rep. No. 102-384 (1992)..............................................................4

*State-Level 340B Laws and Legislation Tracker*, NACHC,
   https://tinyurl.com/59x6np3f (last updated Mar. 19, 2026) ...........................6

## INTRODUCTION AND RULE 40(b) STATEMENT

Here, a divided panel developed a novel preemption doctrine sua sponte that contradicts longstanding Supreme Court precedent.  Splitting from the Fifth and Eighth Circuits, the majority then applied its unconventional approach to enjoin West Virginia from enforcing a state law protecting safety-net health providers.  Given that the decision creates a new circuit split, breaks from precedent, and carries weighty practical and legal consequences, the full Court should rehear this case.

The case concerns Section 340B of the Public Health Service Act.  In essence, the 340B program requires drugmakers that sell their products in the Medicaid and Medicare markets to sell discounted drugs to certain hospitals and clinics.  Many of these facilities lack in-house pharmacies, so they use contract pharmacies to fill prescriptions, including 340B drugs.  But drugmakers have in recent years refused to deliver 340B drugs to these pharmacies.

West Virginia passed S.B. 325 to ensure that high-need facilities could continue to use contract pharmacies.  The law says manufacturers may not refuse to deliver 340B drugs to those pharmacies.  W. VA. CODE § 60A-8-6a(b)(1).  And it prohibits manufacturers from requiring hospitals to provide

1

sensitive claims data as a condition precedent to delivery. *Id.* § 60A-8-6a(b)(2). Plaintiffs—drug manufacturers and their trade association—responded by suing, contending 340B preempted the law.

In a 2-1 decision, the panel upheld a sweeping injunction of West Virginia's law. Largely eschewing the ordinary preemption analysis, the majority created a new framework—not pressed by any party—that focused on purported interference with Congress's use of its spending power. A law that provides financial support to critical-care providers in one of America's most impoverished regions was thus rendered dead letter.

This case warrants en banc review for at least three reasons.

The new circuit split is one obvious reason. The Fifth and Eighth Circuits have addressed materially identical laws and, applying the correct framework, held them not preempted. *See AbbVie, Inc. v. Fitch*, 152 F.4th 635 (5th Cir. 2025) (per curiam) (Mississippi law); *AbbVie, Inc. v. Murrill*, 166 F.4th 528 (5th Cir. 2026) (Louisiana law); *Pharm. Rsch. & Mfrs. of Am. v. McClain*, 95 F.4th 1136 (8th Cir. 2024) (Arkansas law). Yet the majority only passingly acknowledged that it has made this Court an outlier. *Pharm. Rsch. & Mfrs. of Am. v. McCuskey*, No. 25-1054, 2026 WL 898259, at *12 n.12 (4th Cir. Mar. 31, 2026) ("*PhRMA*").

The majority's flawed preemption analysis affords another strong reason for review. The majority mentioned the Supreme Court's "traditional articulation of" preemption in a footnote. *PhRMA*, 2026 WL 898259, at *8 n.6. But it otherwise dispensed with the usual tests, dubbing the 340B program a field all to itself that States are categorically prohibited from touching. *Contra Arizona v. United States*, 567 U.S. 387, 399, 401 (2012). And no party ever argued for the majority's unconventional Spending Clause preemption framework.

Finally, this case involves several questions of exceptional importance: Does 340B preempt state statutes requiring delivery to contract pharmacies? Does spending-power legislation demand a different preemption analysis? And can Congress silently preempt state statutes? The answers have serious implications for state sovereignty, preemption, and our nation's healthcare system.

A sua sponte doctrinal invention that breaks from the Supreme Court, breaks from the other circuits, and breaks the States' ability to protect their most vulnerable patients is what en banc review exists to correct. The Court should grant the petition.

## BACKGROUND

### I. Congress passes the 340B program.

The 340B program requires manufacturers participating in Medicaid and Medicare Part B to sell certain drugs at discounted prices to critical safety-net hospitals and clinics called "covered entities." *Astra USA, Inc. v. Santa Clara Cnty.*, 563 U.S. 110, 113 (2011); 42 U.S.C. § 256b(a)(1). The program enables these facilities to provide "more comprehensive services" to their oft-impoverished and elderly patients. H.R. REP. NO. 102-384, at 12 (1992).

The 340B program has only "three basic parts: (1) a cap on drug makers' prices, (2) restrictions on covered entities, and (3) compliance mechanisms." *Sanofi Aventis U.S. LLC v. HHS*, 58 F.4th 696, 699 (3d Cir. 2023). The restrictions ban duplicate discounts (so there's no "discount on drugs already subject to a Medicaid rebate") and diversion (so "covered entities can sell 340B drugs to only their own patients"). *Id.* at 700 (citing 42 U.S.C. § 256b(a)(5)(A)(i), and 42 U.S.C. § 256b(a)(5)(B)). The compliance mechanisms allow manufacturers and HHS to audit covered entities, *see* 42 U.S.C. § 256b(a)(5)(C), and impose penalties on entities who violate the restrictions, *see* 42 U.S.C. § 256b(d)(1)(B)(vi), (d)(2)(B)(v)(I)–(II).

Often, covered entities can't afford to operate their own in-house pharmacies. So they contract with outside pharmacies to distribute drugs to patients. Contract "pharmacies have always been important participants in delivering 340B drugs to patients." *McClain*, 95 F.4th at 1142.

## II.     The manufacturers revolt.

In 2020, drugmakers began "refus[ing]" to work with covered entities who relied on contract pharmacies. AHA.Amicus.Br.3. They sued HHS, arguing the agency couldn't require them to deliver drugs to contract pharmacies. *See Sanofi*, 58 F.4th at 703-06; *Novartis Pharms. Corp. v. Johnson*, 102 F.4th 452, 459-64 (D.C. Cir. 2024). The courts agreed that the statute contains no affirmative compulsion; 340B's "text is *silent* about delivery" of discounted drugs, so HHS could not compel it. *Sanofi*, 58 F.4th at 703 (emphasis changed); *Novartis*, 102 F.4th at 460.

Since then, manufacturers have exploited that silence and "rebelled" against contract pharmacies. *Sanofi*, 58 F.4th at 700. They've asserted a near "unfettered ability to impose conditions" on covered entities, seeking to "remov[e] contract pharmacies from the picture entirely." *Novartis*, 102 F.4th at 459. Because fewer than half of 340B hospitals operate in-house pharmacies, these policies severed the "lifeline [340B offers] to rural hospitals

and clinics." AHA.Amicus.Br.5. Covered entities scraped by on razor-thin margins, while drugmakers' profits exceeded $660 billion annually. *Id.* at 3 n.3, 6.

## III. States—including West Virginia—respond.

Seeing how the "[d]rug makers [had] rebelled" against contract pharmacies, *Sanofi*, 58 F.4th at 700, many States—including West Virginia— answered with their own legislation, *see State-Level 340B Laws and Legislation Tracker*, NACHC, https://tinyurl.com/59x6np3f (last updated Mar. 19, 2026) (showing 20 states have passed similar laws). These laws aimed to restore the broad access to discounted drugs that Congress had envisioned.

Like other States' laws, West Virginia's S.B. 325 does two principal things. It bars manufacturers from refusing to deliver 340B drugs to contract pharmacies. W. VA. CODE § 60A-8-6a(b)(1). And it prohibits manufacturers from conditioning delivery to contract pharmacies on a covered entity's submission of sensitive claims data. *See id.* § 60A-8-6a(b)(2). S.B. 325 also creates mechanisms to enforce these two requirements. *Id.* § 60A-8-6a(c).

S.B. 325 doesn't disturb 340B's price ceilings, restrictions on covered entities, or compliance mechanisms. It includes internal "savings clauses" designed to avoid any conflict with 340B. *See* W. VA. CODE § 60A-8-6a(b)(1)-

(2).  Indeed, S.B. 325 instructs that it shouldn't "be construed or applied to be in conflict" with any federal law or regulation.  *Id.* § 60A-8-6a(d).

## IV.  **The manufacturers sue.**

The manufacturers responded to laws like West Virginia's by suing, arguing these state laws were preempted.  They largely failed.  This case aside, every district court except one has found that similar state laws are not preempted.  *340B State Law Contract Pharmacy Decisions*, AHA, https://tinyurl.com/y3e86e96 (last visited Apr. 13, 2026).  Perhaps more importantly, both circuit courts to address the issue have rejected the manufacturers' preemption arguments.  Other appeals are pending, including one in this Court.  *See Novartis Pharms. Corp. v. Brown*, No. 1:24-cv-01557-MJM, slip op. (D. Md. Sept. 5, 2024), *appeal filed*, No. 24-1939 (4th Cir. May 29, 2024); *Pharm. Rsch. & Mfrs. of Am. v. Weiser*, No. 25-02437, 2026 WL 763970 (D. Colo. Mar. 18, 2026), *appeal filed*, No. 26-1086 (10th Cir. Mar. 20, 2026); *Pharm. Rsch. & Mfrs. of Am. v. Frey*, No. 25-00469, 2026 WL 184504 (D. Me. Jan. 23, 2026), *appeal filed*, No. 26-1099 (1st Cir. Jan. 28, 2026).

True to form, Plaintiffs sued West Virginia, chiefly arguing that 340B preempts S.B. 325 under field and conflict preemption theories.  JA050-056.  Focusing on the law's claims-data and enforcement provisions, the district

court held S.B. 325 was likely conflict preempted and enjoined its enforcement. *Pharm. Rsch. & Mfrs. of Am. v. Morrisey*, 760 F. Supp. 3d 439, 452-60 (S.D.W. Va. 2024).

The State appealed, but a divided panel affirmed on a novel Spending Clause preemption theory no party advanced. The parties, the majority concluded, had "focus[ed] too much on the *valuative* bargain," when the case should have centered on "the *contractual* bargain Congress made." *PhRMA*, 2026 WL 898259, at *1. In dissent, Judge Benjamin explained that "no binding or persuasive authority" justified the majority's new approach—and flagged how no one had made the arguments the majority enshrined into law. *Id.* at *14 (Benjamin, J., dissenting).

## ARGUMENT

### I. The decision creates a circuit split.

The decision here conflicts with multiple authoritative decisions of other circuits. FED. R. APP. P. 40(b)(2)(C). The Fifth and Eighth Circuits held nearly identical state statutes are not preempted. *Fitch*, 152 F.4th at 641; *Murrill*, 166 F.4th at 539; *McClain*, 95 F.4th at 1139. The majority arrived at a different *destination* than the other circuits and invented a new *route* to get there. Altogether, "the majority depart[ed] dramatically from the unanimous

view of the circuit courts and the consensus view of the district courts." *PhRMA*, 2026 WL 898259, at *16 (Benjamin, J., dissenting).

The problem started with first principles. Both the Fifth and Eighth Circuits held the presumption against preemption applies to these state laws. *Fitch*, 152 F.4th at 647; *McClain*, 95 F.4th at 1143-44. The majority here thought not. *PhRMA*, 2026 WL 898259, at *6-7. Instead, it focused on the Spending Clause, which no other court has said drives the analysis. *Id.* at *6-8.

From there, the majority broke from both the other circuits on field preemption. A federal law is "assumed to preclude enforcement of state laws on the same subject" only if there's a pervasive regulatory framework or a dominant federal interest. *McClain*, 95 F.4th at 1143 (cleaned up). And the Fifth and Eighth Circuits have recognized that "[n]either inference" is present in laws like these. *Id.*; *Fitch*, 152 F.4th at 646. Yet the majority concluded that "Congress has ousted States from this field." *PhRMA*, 2026 WL 898259, at *9.

What's more, the majority disagreed with both other circuits on conflict preemption. *Fitch*, 152 F.4th 647; *McClain*, 95 F.4th at 1143. These state laws speak only to delivery, while 340B speaks to price. *Fitch*, 152 F.4th 647;

9

*McClain*, 95 F.4th at 1145. Arguing that the state laws' enforcement mechanisms undermined HHS's enforcement authority "conflates" the state laws with the federal one. *McClain*, 95 F.4th at 1144; *see also Fitch*, 152 F.4th 647-48. And the state laws do "not create an obstacle for pharmaceutical manufacturers to comply with 340B"; they actually "assist[] in fulfilling the purpose of 340B." *McClain*, 95 F.4th at 1145. But once more, the majority held otherwise on all these points. *PhRMA*, 2026 WL 898259, at *11.

So the majority here departed, in holding and reasoning, from multiple circuit court decisions addressing materially identical state laws.

## II. The decision is irreconcilable with precedent.

Applying ordinary preemption principles, West Virginia's law would stand. But the majority instead crafted an adventuresome new preemption theory unique to the Spending Clause context—one that no party proposed. The Court should look again.

### A. Under traditional principles, S.B. 325 is not preempted.

"[A] strong presumption against preemption" exists "when the federal government regulates in areas traditionally left to the states, such as health and safety." *Pinney v. Nokia, Inc.*, 402 F.3d 430, 457 (4th Cir. 2005). S.B. 325 triggers the presumption against preemption by exercising the State's

10

"historic" power on "matters of health and safety."  *De Buono v. NYSA-ILA Med. & Clinical Servs. Fund*, 520 U.S. 806, 814 (1997).  This presumption cannot be easily swept aside.  States "have a long history of regulating drugs," and West Virginia continues "to play a significant role" even though programs like 340B establish some "federal oversight."  *GenBioPro, Inc. v. Raynes*, 144 F.4th 258, 275 (4th Cir. 2025) (cleaned up).  That starting point makes it unlikely that S.B. 325 is preempted.

The presumption might be overcome using one of three preemption theories: express, field, and conflict.  *Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373, 377 (2015).  No party argues express preemption.  The other two theories also don't work here.

**1.** Field preemption happens only if (1) Congress establishes a "framework of regulation so pervasive that Congress left no room for the States to supplement it" or (2) there's a "federal interest so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject."  *PhRMA*, 2026 WL 898259, at *19 (Benjamin, J., dissenting) (cleaned up) (quoting *Arizona*, 567 U.S. at 399).  As to 340B, neither holds true.

First, Congress did not "legislate so comprehensively" that there's "no room for supplementary state legislation."  *N. Va. Hemp & Agric., LLC v.*

*Virginia*, 125 F.4th 472, 493 (4th Cir. 2025) (cleaned up). The 340B program has only two substantive parts: caps on drug prices and restrictions on covered entities. *PhRMA*, 2026 WL 898259, at *19 (Benjamin, J., dissenting) (quoting *Sanofi*, 58 F.4th at 699). Congress chose "to not regulate delivery." *Id.* at *20. That "silence" "indicate[s] a congressional intent [not] to preempt the field." *Id.*; *see also AIDS Healthcare Found. v. Douglas,* 457 F. App'x 676, 678 (9th Cir. 2011) ("[N]o[thing] indicat[es] that Congress intended to occupy the whole field in this part of the cooperative Medicaid program." (cleaned up)).

Second, S.B. 325 does not "regulate in an area with a dominant federal interest." *PhRMA*, 2026 WL 898259, at *21 (Benjamin, J., dissenting). The federal government possesses a dominant interest in things like "interstate navigation, oil tankers, aircrafts, and nuclear safety"—not pharmaceutical regulation. *Id.* at *21-23; *see also GenBioPro*, 144 F.4th at 274-75. And the federal-interest inquiry centers on "the underlying subject matter that Congress seeks to legislate," not the Article I "power" that Congress exercises in passing given legislation. *PhRMA*, 2026 WL 898259, at *23 (Benjamin, J., dissenting). Congress must always ground its legislation in some "enumerated power," so were that "enough to displace a state statute," *every* federal law

would field preempt state law.  *Id.*  The "ordinary preemption principles [apply] to spending legislation." *Id.* at *21.

2.      S.B. 325 creates no conflict preemption problem, either.  Conflict preemption happens only if "the state law stands as an obstacle" to congressional purposes.  *PhRMA*, 2026 WL 898259, at *23 (Benjamin, J., dissenting) (quoting *Oneok*, 575 U.S. at 377).  Congress enacted 340B so that hospitals could use money saved on drug costs to "subsidize" other services. *Id.* at *24 (cleaned up).  So S.B. 325 furthers 340B's purposes—ensuring covered entities remain able to "stretch scarce [f]ederal resources as far as possible." *Id.* (cleaned up); *see also Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 447-48 (2005) (finding that state statute imposing "parallel requirements" advancing federal statute was not preempted).

S.B. 325's enforcement mechanisms also don't intrude on HHS's authority to enforce 340B.  "HHS has exclusive authority over disputes" arising under the 340B program (like disputes about "pricing, overcharges, refunds, and diversion of 340B drugs").  *PhRMA*, 2026 WL 898259, at *24 (Benjamin, J., dissenting) (cleaned up).  The State, by contrast, has exclusive authority to impose penalties when manufacturers refuse to deliver 340B drugs to contract pharmacies.  *Id.*  Because "[t]here is no overlap in the

enforcement Venn Diagram," no conflict exists.  *Id.* (quoting *Murrill*, 166 F.4th at 541).

And S.B. 325's claims-data provision honors the federal audit process. 340B establishes a *post hoc* compliance-verification system.  *PhRMA*, 2026 WL 898259, at *26 (Benjamin, J., dissenting) (citing *Manufacturer Audit Guidelines and Dispute Resolution Process*, 61 Fed. Reg. 65406, 65406 (Dec. 12, 1996)).  West Virginia's law forbids manufacturers only from demanding claims data as a condition precedent to delivery.  W. VA. CODE § 60A-8-6a(b)(2).  Manufacturers remain free to obtain this data through the 340B audit process.  *See, e.g.*, *AbbVie Inc. v. Hilgers*, No. 4:25CV3089, 2025 WL 3688051, at *4 (D. Neb. Dec. 19, 2025) (construing similar provision).  S.B. 325 leaves the statutory audit process undisturbed.

## B.    The majority's novel preemption analysis lacks support.

The majority didn't rely on any "traditional articulation" of preemption principles to find S.B. 325 preempted."  *PhRMA*, 2026 WL 898259, at *8 n.6. Rather, it relegated the Supreme Court's binding standards to a footnote.  *See id.*  It then charted a new but unwarranted path focused on Congress's source of power—the Spending Clause—rather than the federal law's subject matter and congressional intent.  *Contra Planned Parenthood of Houston & Se. Tex.*

14

*v. Sanchez*, 403 F.3d 324, 330 (5th Cir. 2005) ("The growing consensus … is to analyze such [Spending Clause] claims under traditional preemption doctrine.").

The majority first invoked inapplicable doctrines. It reframed the preemption question around Spending Clause "bargains." *PhRMA*, 2026 WL 898259, at *6-9 (cleaned up). And it imported the intergovernmental immunity doctrine because it found no "rigid demarcation" between that doctrine and preemption. *Id.* at *6-7; *but see, e.g.*, *Texas v. DHS*, 123 F.4th 186, 209 (5th Cir. 2024) (distinguishing the doctrines). Though the majority conceded the intergovernmental immunity doctrine didn't "control," it nonetheless concluded that the "same concerns animating" the doctrine "counsel[ed] skepticism" here. *PhRMA*, 2026 WL 898259, at *7.

The majority then dispensed with the presumption against preemption by misreading what S.B. 325 does. The Act "regulates the pharmaceutical industry," which is a "traditional area of state regulation." *PhRMA*, 2026 WL 898259, at *7. But without much explanation, the majority concluded S.B. 325 was "anything but a traditional health-and-safety regulation" merely because it involved federal-private relationships. *Id.* (citing *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001) (holding state law fraud-on-the-FDA claims

15

preempted)). Securing the provision of drugs and health services would seem to be a classic health regulation, regardless of the actors involved.

The majority also improperly defined the field. Though this Court recently warned against "defining the preempted field by restating the precise subject addressed by [the federal law]," the majority took that "tautological" approach. *GenBioPro*, 144 F.4th at 273. Because S.B. 325 references 340B, 340B is the field—said the majority. *PhRMA*, 2026 WL 898259, at *9.

The majority then mistakenly held S.B. 325 was preempted because it "alter[ed] the terms of a federal bargain." *PhRMA*, 2026 WL 898259, at *10. On this view, S.B. 325 imposed delivery obligations that were "unfair[ly] surpris[ing]" to manufacturers—though strictly speaking, "[t]hat notice element is only relevant to the legitimacy of *Congress's*" actions. *Id.* And the "dominant federal interest" supporting field preemption was not the federal law's subject matter, but "the efficacy of Congress's spending[]power." *Id.* So according to the majority, whenever Congress enacts a law under the Spending Clause, it preempts all state laws affecting that "bargain." *Id.* No court has ever adopted such a sweeping view before. For good reason, as it flips the usual Spending Clause analysis upside down by permitting new limitations to be imposed on States that are not plainly stated in the relevant

16

federal law. *Contra Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981).

Finally, the majority briefly but incorrectly addressed conflict preemption. It held that S.B. 325's enforcement mechanisms "intrude[] on HHS's enforcement authority" because they could require the State to answer antecedent questions relating to 340B. *PhRMA*, 2026 WL 898259, at *11. But HHS lacked authority to address contract pharmacies because it is a creature of limited statutory power. *See Sanofi*, 58 F.4th at 703-06. That shouldn't mean that States—independent sovereigns with preexisting police powers— also lack that power. *Contra PhRMA*, 2026 WL 898259, at *11. And though the majority felt that "S.B. 325 [also] frustrates the operation" of 340B's audit mechanism, it did not explain what particular provision of the audit program entitled manufacturers to demand claims data as a condition of delivery. *Id.*

The decision conflicts with precedent. It disregards the Supreme Court's binding preemption framework, embarking instead on a novel Spending Clause preemption inquiry. *Contra St. Luke's Health Sys., Ltd. v. Labrador*, 782 F. Supp. 3d 953, 978-79 (D. Idaho 2025) (collecting authorities showing "ordinary preemption principles apply to Spending Clause

legislation—even if private parties happen to be the recipients of the federal funds"). The full Court's review is needed to correct that error.

### C. The decision violated party presentation principles.

The decision further offends one of the essential rules of appellate review: "the principle of party presentation." *Clark v. Sweeney*, 607 U.S. 7, 9 (2025) (cleaned up). "Courts generally decide only the questions that are presented by the parties." *Riley v. Bondi*, 606 U.S. 259, 273 (2025). So "[t]his court makes no habit of venturing beyond the confines of the case on appeal to address arguments the parties have deemed unworthy of orderly mention." *Adbul-Mumit v. Alexandria Hyundai, LLC*, 896 F.3d 278, 290 (4th Cir. 2018) (cleaned up). When it does, the Supreme Court hasn't hesitated to reverse. *Clark*, 607 U.S. at 10.

Here, the majority made its unique spending-power argument the centerpiece of its analysis. It emphasized that the case was about "bargains" created through Congress's "spending power." *PhRMA*, 2026 WL 898259, at *1. Because the majority concluded West Virginia was "interfer[ing] with spending-power bargains," the State cannot enforce any part of its law. *Id.* at *7-8, *10.

Yet until the opinion issued, "not one word was devoted to Congress' spending power or why it should change [the Court's] preemption analysis." *PhRMA*, 2026 WL 898259, at \*14 (Benjamin, J., dissenting). The spending power was never mentioned before the district court, in the roughly 350 pages of party and amicus briefing, in the 30 or so notices of supplemental authorities and related filings, or at oral argument.

Nothing "justified the panel's takeover of the appeal." *United States v. Sineneng-Smith*, 590 U.S. 371, 379 (2020). Non-jurisdictional arguments are usually waived. *Franchise Tax Bd. of Cal. v. Hyatt*, 587 U.S. 230, 235 n.1 (2019). "[P]arties represented by competent counsel" are presumed to "know what is best for them." *Sineneng-Smith*, 590 U.S. at 375 (cleaned up). And no intervening development reset the board.

The majority's approach denied West Virginia a "full and fair opportunity to present [its] strongest possible arguments to the court." *Ga. Firefighters' Pension Fund v. Anadarko Petroleum Corp.*, 99 F.4th 770, 772 (5th Cir. 2024). The State should not be obliged to address every imaginable argument that might support a district court's injunction. And the decision "clearly inflicts irreparable harm on the State" by depriving it of "[t]he

[]ability to enforce its duly enacted plans." *Abbott v. Perez*, 585 U.S. 579, 602 n.17 (2018).

## III. This case presents exceptionally important questions.

S.B. 325 is part of a growing wave of similar state legislation presenting the same preemption issues. The majority's unusual preemption analysis thus reverberates beyond this case—reaching Maryland's similar law, among others.

This case also carries enormous real-world consequences. Contract pharmacies account for 25% of 340B savings for participating hospitals; for rural critical access hospitals, that figure rises to 52%. AHA.Amicus.Br.4. Within West Virginia, 97% of 340B hospitals depend on contract pharmacies to distribute medication to patients. *Id.* at 5. So 340B hospital's continued financial viability depends on access to savings through contract pharmacies. Endorsing the drugmakers' policies could cause "$39 million in annual losses" to one hospital system alone. *Id.* at 4-6. Circumstances like these call for the en banc Court's review.

## CONCLUSION

The Court should grant the petition.

Respectfully submitted,

JOHN B. MCCUSKEY
   ATTORNEY GENERAL

Michael R. Williams
   *Solicitor General*

/s/ *Caleb B. David*
Caleb B. David
   *Deputy Solicitor General*
   *Counsel of Record*

Caleb A. Seckman
   *Assistant Solicitor General*

Emily C. Ahlstrom*
   *Assistant Solicitor General*

OFFICE OF THE ATTORNEY
GENERAL OF WEST VIRGINIA
State Capitol Complex
Building 1, Room E-26
Charleston, WV 25301
(304) 558-2021
cdavid@wvago.gov

*admitted in the District of Columbia;
practicing under supervision of West
Virginia attorneys

Dated: April 14, 2026

*Counsel for Defendants-Appellants*

# CERTIFICATE OF COMPLIANCE

1.     This petition complies with Fed. R. App. P. 40(d)(3)(A) because it contains 3,894 words.

2.     This petition complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6), as required by Fed. R. App. 40(d)(2), because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point CenturyExpd BT font.

/s/ Caleb B. David
Caleb B. David